# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SVETLANA VISINSCAIA<br>46701 Bullfinch Square<br>Sterling, VA 20164<br><br>PLAINTIFF,<br><br>v.<br><br>JANET NAPOLITANO, Secretary,<br>U.S. Department of Homeland Security, in her official capacity as well as her successors, and assigns, 245 Murray Lane SW, Bldg. 410, Washington, DC 20528;<br><br>and<br><br>ALEJANDRO MAYORKAS, Director<br>U.S. Citizenship & Immigration Service, in his official capacity as well as his successors and assigns, 20 Massachusetts Ave NW<br>Washington, DC 20529;<br><br>and<br><br>RON ROSENBERG, Acting Chief<br>USCIS Administrative Appeals Office, in his official capacity as well as his successors and assigns, 20 Massachusetts Ave., NW, MS 2090 Washington, DC 20529-2090;<br><br>and<br><br>GREGORY RICHARDSON, Director<br>USCIS Texas Service Center, in his official capacity as well as his successors and assigns, 4141 N. St. Augustine Dr.<br>Dallas, TX 75227;<br><br>DEFENDANTS | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF<br><br><br>CIVIL ACTION NO._____<br><br>ALIEN NO. 205-348-882<br><br>AGENCY CASE NO.:<br>　　　SRC1214751254 |

## **Complaint for Declaratory and Injunctive Relief**

Plaintiff Svetlana Visinscaia, by and through her undersigned counsel, allege as follows:

### I.   Introduction

1. This action is brought to challenge the failure of the Department of Homeland Security (DHS), U.S. Citizenship and Immigration Services (USCIS), the Administrative Appeals Office (AAO), and the USCIS Texas Service Center, and its responsible officials (collectively, "defendants"), to perform a mandatory duty owed the plaintiff. Specifically, the plaintiff alleges that the defendants' decision denying her I-140 petition for classification as an alien of extraordinary ability (EB-1 petition) was in clear violation of the agency's established policy and regulations, the Administrative Procedure Act (APA), and the Due Process clause of the 5th Amendment to the U.S. Constitution.

2. Plaintiff filed her EB-1 petition on May 3, 2012 with the USCIS Texas Service Center and was assigned USCIS Receipt number SRC-12-147-51254. See **Exhibit A**. On May 11, 2012 USCIS issued a Request for Evidence (**Exhibit B**) which was timely responded to by the plaintiff. The Texas Service Center subsequently denied plaintiff's EB-1 petition on August 17, 2012. See **Exhibit C**. Plaintiff appealed the decision to the AAO which denied the appeal on January 22, 2013. See **Exhibit D**. The denial of plaintiff's appeal was the final agency action taken in her case.

3. Plaintiff asserts that the agency's denial of her EB-1 petition is arbitrary and capricious and in clear violation of established rules and procedures for the adjudication of immigrant petitions, and specifically EB-1 petitions. Further, plaintiff asserts that the agency's denial has resulted in substantial and ongoing harm to the plaintiff.

4. Plaintiff seeks declaratory and injunctive relief to compel the defendants to adjudicate her EB-1 petition in accordance to statutory law and written agency policies and regulations.

## II. Jurisdiction

5. This Court has subject matter jurisdiction over the claims put forth in this Complaint pursuant to: (1) 28 U.S.C. §1331 (federal question jurisdiction) as the plaintiff's claims arise under U.S. law, including 8 USC §1101 et seq. (Immigration and Nationality Act, INA); and (2) 5 U.S.C. §§701 et seq. (Administrative Procedures Act, APA) including 5 U.S.C. §§702 (providing a waiver of sovereign immunity for claims brought pursuant to the APA) and §706(2). Further, plaintiff asserts that she has exhausted all available legal remedies culminating with the denial of her petition by the AAO. This Court may provide relief under 5 U.S.C. §§553 and 701 et. Seq. (APA), 28 U.S.C. §§2201 and 1331 et. seq. (Declaratory Judgment Act).

## III. Venue

6. Venue is appropriate in this Court pursuant to 28 U.S.C. §1391(e)(1), as amended, which provides for a civil action in which each defendant is an officer or employee of the U.S. government or any agency thereof acting in his or her official capacity or under color of legal authority, or is an agency of the United States to be brought in any judicial district in which a defendant in the action resides. In the instant case, the Department of Homeland Security, the U.S. Citizenship and Immigration Service, and the Administrative Appeals Office are headquartered within the jurisdiction of the District of Columbia District Court.

7. Plaintiff further asserts that a substantive part of the events and/or omissions contained in this Complaint arose within the jurisdiction of this Court including the final agency action; the denial of plaintiff's EB-1 petition.

8. Plaintiff further asserts that judicial economy and the interests of justice warrant jurisdiction in this Court as the agency's actions are subject to the discretion of the Secretary of Homeland Security who is headquartered and performs a significant portion of her duties within this Court's jurisdiction, and the decentralized nature of USCIS case processing allows for the transfer of immigrant petitions to any agency facility located within the U.S. at any time during the adjudication phase making this venue proper.

### IV.   Plaintiff

9. Plaintiff Svetlana Visinscaia is a citizen and native of Moldova and residing in Sterling, VA. Plaintiff filed an EB-1 petition for classification as an alien of extraordinary ability in the field of ballroom dance based on her receipt of a major international award, to wit the Gold Medal at the 2005 World DanceSport Federation World Championships in the Junior Ten Dance Category. See 8 C.F.R. §204.5(h)(3); 56 FR 60897, 69898-99 (Nov. 29, 1991). Alternatively, plaintiff asserted that she qualified for EB-1 classification based on meeting five of the lesser statutory qualifications outlined at INA§203(b)(1)(A) and 8 CFR §204.5(h)(3) based on her accomplishments as an athlete-competitor and instructor of DanceSport. DHS regulations require a petitioner to meet three of the lesser criteria for qualification. Plaintiff provided substantial documentation verifying she meets and exceeds the necessary regulatory criteria as well as evidence of her sustained national acclaim as required by the 9th Circuit Court of Appeals in Kazarian v. USCIS, 596 F.3d 1115 (9th Cir. March 4, 2010).

## V.     Defendants

10.     Defendant Janet Napolitano is the Secretary of the DHS and is named here in her official capacity, as well as her successors. Ms. Napolitano is charged with the enforcement of the INA and the delegation of such powers and authority to subordinate employees of the USCIS, an agency within DHS. Ms. Napolitano is domiciled for the purpose of this action in the District of Columbia and performs a substantial amount of her official duties within the jurisdiction of the Court.

11.     Defendant Alejandro Mayorkas is the Director of the USCIS and is named here in his official capacity, as well as his successors. Mr. Mayorkas is charged with the implementation of the INA and is authorized to delegate such authority to subordinate USCIS employees. USCIS is charged with the adjudication of immigrant worker petitions including EB-1 petitions for classification as extraordinary ability. For purposes of this action, Mr. Mayorkas is domiciled in the District of Columbia and performs a substantial amount of his official duties within the jurisdiction of this Court.

12.     Ron Rosenberg is the Acting Chief of the AAO and is named here in his official capacity, as well as his successors. The AAO is charged by USCIS with authority to handle appeals of decision on certain immigrant petitions including the EB-1 petition for classification of extraordinary ability. The AAO adjudicated plaintiff's appeal and its decision constitutes the final agency action in plaintiff's case. For purposes of this action, Mr. Rhew is domiciled in the District of Columbia and performs a substantial amount of his official duties, including the adjudication of plaintiff's appeal, within the jurisdiction of this Court.

13. Defendant Gregory Richardson is the Director of the USCIS Texas Service Center and is charged here in his official capacity, as well as his successors. The USCIS Texas Service Center is charged with the adjudication of certain immigrant petitions and adjudicated plaintiff's initial EB-1 filing.

### VI. Background and Factual Allegations

14. INA § 203(b)(1)(A) provides immigrant visas to aliens with extraordinary ability, if: (i) the alien has extraordinary ability in the sciences, arts, education, business, or **athletics**, which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation, (emphasis added); (ii) the alien seeks to enter the United States to continue work in the area of extraordinary ability, and (iii) the alien's entry into the United States will substantially benefit prospectively the United States. As used in this section, the term "extraordinary ability" means a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor. 8 C.F.R. § 204.5(h)(2).

15. A successful candidate can establish sustained national or international acclaim through evidence of a "one-time achievement (that is a major, internationally recognized award)." Id. Absent such an award, the petitioner can establish the necessary sustained acclaim by meeting at least three of the ten criteria to meet the statutory requirements. Additionally, a petitioner may submit comparable evidence to establish his eligibility. See 8 C.F.R. § 204.5(h)(4).

16. In reviewing petitions of extraordinary ability, USCIS applies a two-part analysis where the evidence is first considered in relation to the plain language of 8 C.F.R. §

204.5(h)(4) and then considered in the context of a final merits determination consistent with the test set forth in Kazarian v. USCIS, 596 F.3d 1115 (9th Cir. March 4, 2010). The first assessment is one of statutory eligibility, essentially, whether the petitioner has established that she prima facie meets the necessary statutory criteria for establishing extraordinary ability. The second aspect of the analysis is discretionary and rests on whether the petitioner's evidence establishes that she has sustained national and/or international acclaim.

17. USCIS has adopted the methodology of Kazarian and created a framework for evaluating evidence for EB-1 petitions under this framework. See USCIS Policy Memorandum PM-602-0005.1: Evaluation of Evidence Submitted with Certain Form I-140 Petitions; Revisions to the *Adjudicator's Field Manual (AFM)* Chapter 22.2, *AFM* Update AD11-14 (December 22, 2010). See **Exhibit E**.

18. Immigrant petitions, including the EB-1 petition, are adjudicated under USCIS regulations on a "preponderance of the evidence standard". The AAO in Matter of Chawathe, 25 I&N Dec. 369 (AAO 2010), established the standard of proof in administrative immigration proceedings as the "preponderance of the evidence". "Preponderance of the evidence" means for most I-140 and I-485 cases, the petitioner or applicant must submit evidence that demonstrates his/her claim is "probably true." The AAO further held that even if the Director has some doubt as to the truth, if the petitioner submits relevant, probative, and credible evidence that leads the Director to believe that the claim is "more likely than not" or "probably" true, the applicant has satisfied the standard of proof. See also Matter of E-M-, 20 I&N Dec. 77, 79-80 (Comm'r 1989).

19. Plaintiff filed an EB-1 petition with USCIS seeking classification as an alien of extraordinary ability as an athlete-competitor and instructor of ballroom dance (DanceSport) on May 3, 2012. See **Exhibits A and B**. In support of her petition, the plaintiff provided voluminous evidence establishing that she is the 2005 Junior Ten Dance World Champion as recognized by the World DanceSport Federation, the international governing body of the sport as recognized by both the International Olympic Committee and the International Olympic Committee. Plaintiff asserted that her recognition as a World Champion by the highest governing body of her sport qualified as a one time achievement as defined by the regulations and case law.

20. In the alternative, plaintiff asserted that she met five of the ten lesser criteria to establish her eligibility for extraordinary ability as outlined in INA 203(b)(1)(A) and 8 CFR 204.5(h)(3):

   1. Receipt of lesser international and national awards for excellence in the field of endeavor;

   2. Published material about the petitioner in professional or trade publications or major media;

   3. Original artistic and athletic contributions of major significance in the field;

   4. Display of the her work at artistic exhibitions or showcases;

   5. Evidence that she has performed in a leading or critical role for organizations that have a distinguished reputation.

21. To establish her eligibility under the first alternative criteria, receipt of lesser national and international awards, plaintiff submitted evidence with her initial filing and the response to the Request for Evidence that she had won over 46 medals or significant awards in **international** competitions sanctioned by the World DanceSport Federation

and over 20 medals and significant awards in **national** competitions; including being named "Best Sportsman" in Moldova in two consecutive years for 2005 and 2006. Plaintiff also provided letters of endorsement from distinguished professional and experts in the field establishing that her demonstrated accomplishments in international and national competitions as well as her distinction as Sportsman of the Year in Moldova for 2005 and 2006 placed her among the best and most accomplished athlete-competitors in DanceSport.

22. Under the second evidentiary criteria, plaintiff provided evidence in her initial filing and response to the Request for Evidence that she had been the subject of articles in major media and trade publications and provided evidence of the circulation of the media printing the articles including: (1) that she had been the subject of a special feature "Dance with us" broadcast on TV Moldova 1, the only nationally broadcast public television channel and main broadcast channel in Moldova; (2) that she had been written about in at least ten articles appearing in "Sport Curier", the largest sporting newspaper in Moldova with an estimated circulation of over 85,000 issues per month; (3) that her results from intentional competitions were reported in *Tanzspeigel* ("Dance Mirror") the official magazine of the German Dance Association, and *Pro Sport Romania*, a Romanian newspaper with an estimated daily circulation of 80,000-110,000 issues; (4) that she had been the subject of an extensive interview published on allfun.md (all fun Moldova) part of the major internet portal allmoldova.md and evidence that the web site averages between 5 million to 6.5 million page views per month; (5) that she was featured in the book Codreanca, a historical account of Codreanca Club, a famous, nationally known DanceSport training studio in Moldova where plaintiff trained and later

became an instructor; and (6) that her performance at the 2003 Petrovskii Cup was covered in the *Sankt-Peterburgskie Vedomosti*, one of the oldest and most prominent Russian newspapers with the largest circulation in northern Russia. The plaintiff's media coverage included a combination of articles about her specifically as well as the results from major international and national tournaments where she medaled.

23.  Under the third criteria, the plaintiff provided in her initial filing and subsequent response to Request for Evidence, letters from qualified experts in the field including past World, European, and American DanceSport and competitive ballroom dancing champions verifying that plaintiff has developed unique techniques for weight transfer movements for the female dance partner to improve form, style, and competition scores for certain difficult DanceSport moves such as the Viennese Cross and the Ronde to Promenade. The experts, consisting of both individuals who have worked with her in the past and those who did not know her previously but had evaluated her work, all attest to her unique contributions to the field of DanceSport and, specifically, that the movements plaintiff has developed are now being taught in some of the best international dance studios in the world. The experts further attested to the plaintiff's sustained national and international acclaim and to her extraordinary ability and accomplishments in the field, characterizing her as one of the select few to have risen to the top of DanceSport.

24.  Plaintiff also submitted letters from her students verifying her original contributions to their athletic accomplishments and provided copies of their own certificates verifying national and international achievements in the field of DanceSport.

25.  Under the fourth criteria, plaintiff provided in her initial filing and response to the Request for Evidence that she had been invited to perform over twenty times at the

Moldova National Palace between 2004-2008. Plaintiff also provided evidence that the National Palace is a premier venue for cultural events of national importance in Moldova.

26. Under the fifth criteria, plaintiff provided in her initial filing and response to the Request for Evidence that she had performed a critical and leading rule as an instructor at Codreanca Club. She also provided evidence of the distinguished reputation held by Codreanca Club by verifying the media coverage received by Codreanca.

27. In addition to the evidence establishing her eligibility under the statutory eligibility, plaintiff provided additional expert opinion letters and other relevant, probative and credible evidence of her sustained national and international acclaim as an athlete-competitor and instructor of DanceSport.

28. Despite nearly a thousand pages of evidence supporting not only the plaintiff's contention that her 2005 Junior Ten Dance World Champion as recognized by the World DanceSport Federation is a major one time achievement consistent with the regulations, but also establishing her eligibility under the alternate criteria, the USCIS Texas Service Center denied the EB-1 petition on August 17, 2012. See **Exhibit C**. USCIS denied the plaintiff's assertion that her 2005 World Championship constituted a major one time achievement and further concluded that the plaintiff met only one of the alternate criteria, that she had been the subject of "published material in major media or trade magazines". As USCIS did not find that the petitioner met at least three of the alternate criteria, it did not make a discretionary determination (part 2 of the Kazarian analysis) as to whether plaintiff sustained national or international acclaim in her field. The decision of USCIS is based solely on a showing (or lack thereof) of statutory eligibility.

29. Plaintiff appealed the adverse USCIS decision to the AAO which denied the appeal on January 22, 2013. See **Exhibit D**. The AAO sustained the findings of USCIS and also concluded that the plaintiff failed to establish prima facie eligibility under the statutory criteria. The AAO likewise did not conduct a discretionary analysis of the evidence as to whether the plaintiff had demonstrated sustained national or international acclaim.

### VII. Exhaustion of Administrative Remedies and Final Agency Action

30. The AAO is an administrative body that considers appeals from decisions of officers of the USCIS in certain types of cases including employment based immigrant visa petitions and specifically EB-1 petitions. See generally 8 C.F.R. § 103.3. The AAO conducts *de novo* review of the petition on appeal. Id. The AAO is the final administrative remedy available to the plaintiff. The decision of the AAO denying plaintiff's appeal constitutes the final agency action in this case and constitutes the final agency action pursuant to 5 U.S.C. §704.

### VIII. Claims

31. In denying the plaintiff's EB-1 petition, defendants acted arbitrarily and capricious in deviating from established USCIS policy and regulations and the directives outlined in the Court's decision in Kazarian which has been incorporated into USCIS' December 2010 policy memorandum regarding the adjudication of I-140 petitions. Additionally, defendants have caused substantial and ongoing harm to the plaintiff. The denial of the plaintiff's EB-1 petition has clear legal consequences to the plaintiff who does not have permanent legal status in the United States and is causing continuing and

on-going substantial injury to the plaintiff who must return to Moldova upon expiration of her authorized period of stay. See 5 U.S.C. §702, 706(2).

32. In deviating from established USCIS policy, defendants held the plaintiff to a higher evidentiary standard than the required "preponderance of the evidence standard" established by USCIS policy and regulations. Defendants also failed to make a meaningful or reasoned analysis of the plaintiff's evidence under the evidentiary framework established by the December 2010 policy memorandum including failing to consider key evidence submitted by petitioner, dismissing evidence without justification or discussion, and providing contradictory reasoning and analysis of the submitted evidence. A review of the Certified Administrative Record will establish that both the USCIS and AAO did not consider the relevant factors and did not articulate a rational connection between the facts found and conclusions made in the decision. See 5 U.S.C. §706(2).

33. As a result of the defendant's deviation from established USCIS policy resulting in the arbitrary and capricious finding that the plaintiff did not possess the one time achievement requirement or established her eligibility under the alternate criteria, neither the USCIS nor AAO evaluated plaintiff's evidence for discretionary eligibility for EB-1 classification and made no determination as to whether plaintiff has sustained national or international recognition for extraordinary ability in her field.

### IX. Prayer for Relief

Wherefore, the plaintiff respectfully requests that the Court:

34. Declare the defendants have acted arbitrarily and capriciously in of violation 5 U.S.C. §706(2) in adjudicating plaintiff's EB-1 petition by irrationally deviating from established USCIS policy and procedure and have abused their discretion in denying the plaintiff's EB-1 petition.

35. Declare that the defendants have violated 5 U.S.C. 706(2) in holding plaintiff to a higher evidentiary burden in the adjudication of the EB-1 petition and by imposing novel evidentiary requirements on plaintiff in excess of statutory jurisdiction, authority or limitation.

36. Order defendants to reopen and adjudicate the plaintiff's EB-1 consistent with the Order of this Court and established USCIS policy and regulations.

37. Grant such other relief that this Court deems just, equitable, and proper.

38. Award the plaintiff her attorney's fees and costs in the amount of $10,000 and Costs to the court pursuant to the Equal Access to Justice Act (EAJA) or other applicable law.

39. Maintain jurisdiction over this action until USCIS has complied with this Court's Orders.

Respectfully submitted this 21st day of February, 2013.

_____
Ladan Mirbagheri Smith
Mirbagheri & Smith LLP
1688 East Gude Drive, Ste. #201
Rockville, MD 20850
(301) 309-1223

Attorney for Plaintiff

## Table of Exhibits

USCIS Receipt Notice for the EB-1 petition filed by plaintiff with the USCIS
Texas Service Center on May 3, 2012..................................................................**Exhibit A**

USCIS Request for Evidence issued in connection with plaintiff's EB-1
petition on May 11, 2012........................................................................................**Exhibit B**

USCIS Notice of Decision denying plaintiff's EB-1 petition dated
August 17, 2012.....................................................................................................**Exhibit C**

USCIS AAO Receipt Notice and Decision denying plaintiff's administrative
appeal dated January 22, 2013...............................................................................**Exhibit D**

USCIS Policy Memorandum PM-602-0005.1: Evaluation of Evidence
Submitted with Certain Form I-140 Petitions; Revisions to the *Adjudicator's
Field Manual (AFM)* Chapter 22.2, *AFM* Update AD11-14 (December 22, 2010).....**Exhibit E**