## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| **SVETLANA VISINSCAIA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL NO.  13-223-JEB** |
| | ) | |
| **RAND BEERS,[1]** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |
_____)

## DEFENDANTS' MEMORANDUM IN SUPPORT OF
## THEIR MOTION FOR SUMMARY JUDGMENT

The Court should grant summary judgment for Defendants and dismiss Plaintiff Svetlana Visinscaia's complaint with prejudice because, as a matter of law, the United States Citizenship and Immigration Services' (USCIS's) final decision in this case was not arbitrary and capricious. The agency provided an extensive explanation, based on record evidence, for denying Visinscaia's immigrant visa petition for classification as an alien of extraordinary ability in the field of competitive ballroom dancing and instruction.  The Immigration and Nationality Act, as amended, (INA) limits the extraordinary ability category to aliens who have sustained national or international acclaim and whose achievements have been recognized in the alien's field of endeavor.  After USCIS reviewed Visinscaia's petition, the agency determined that her documentation failed to meet the highly selective standards for admission to the United States as one of a small percentage of select individuals who have reached the top of their profession.  The agency's appellate body further conducted a *de novo* review of the documentation on administrative appeal, but determined again that Visinscaia's documentation failed to meet the

---

[1]  Under Federal Rule of Civil Procedure 25(d), Rand Beers, Acting Secretary of Homeland Security, is substituted for former Secretary Janet Napolitano.

stringent standards under the statute and implementing regulations.  After USCIS afforded

Visinscaia multiple opportunities to press her case, she failed to meet her burden of providing

documentation falling within the regulatory criteria for evaluating an alien's artistic

achievements.  Because the agency examined Visinscaia's documentation and articulated a

satisfactory explanation for denying her request for an immigration benefit, the agency's

decision must be upheld under the Administrative Procedure Act's lenient arbitrary and

capricious standard of review.

## STATUTORY AND REGULATORY BACKGROUND

The INA provides for the classification of aliens seeking admission to the United States

based the alien's "extraordinary ability in the sciences, arts, education, business, or athletics

which has been demonstrated by sustained national or international acclaim and whose

achievements have been recognized in the field through extensive documentation."  Immigration

Act of 1990, Pub. Law No. 101-649, § 121(a) (Nov. 29, 1990) (codified at 8 U.S.C.

§ 1153(b)(1)(A)(i)).[2]  The legislative history indicates that "admission under this category is to

be reserved for that small percentage of individuals who have risen to the very top of their field

of endeavor."  H.R. Rep. No. 101-723, part 1, at 59 (Sept. 19, 1990) (1990 WL 200418, at

*6739).

The total number of employment-based immigrants permitted to enter the United States

for each fiscal year is 140,000.  *See* 8 U.S.C. § 1151(d)(1).  Only 28.6 percent of this number

may be allotted to the employment-based first preference category, which includes aliens of

extraordinary ability, outstanding researchers and professors, and multi-national managers and

---

[2]  Aliens falling into this category are referred to as "employment-based first preference immigrants," or colloquially by the immigration bar as "EB-1" immigrants, as these aliens are classified under the first heading of the employment-based section of the INA, *i.e.*, § 203(b)(3).

executives. *See* 8 U.S.C. § 1153(b)(1). Congress delegated to USCIS the authority to adjudicate immigrant visa petitions to classify foreign nationals as aliens of extraordinary ability. *See* Homeland Security Act of 2002, Pub. Law No. 107-296, § 451(b)(1) (Nov. 25, 2002) (codified at 6 U.S.C. § 271(b)(1)).[3] Congress also delegated authority to USCIS to establish policies governing the adjudication of extraordinary ability petitions. *Id.* § 451(a)(3)(A).

An alien may self-petition for classification as an alien of extraordinary ability by filing a Form I-140 petition with USCIS. *See* 8 C.F.R. § 204.5(h)(1).[4] In adjudicating an I-140 petition, USCIS must determine whether the facts stated in the petition and supporting documents are true, *see* 8 U.S.C. § 1154(b), and it may reject statements that it finds unsubstantiated or without a factual basis, *see Systronics Corp. v. INS*, 153 F. Supp. 2d 7, 15 (D.D.C. 2001). The burden of proof rests on the petitioner to establish by a preponderance of evidence that she is fully qualified for the benefit sought. *See* 8 U.S.C. § 1361; *Matter of Martinez*, 21 I. & N. Dec. 1035, 1036 (BIA 1997); *Matter of Chawathe*, 25 I. & N. Dec. 369, 374-76 (AAO 2010).

The statute does not define "extraordinary ability." *See* 8 U.S.C. § 1101(a) (definitions section); *Rijal v. USCIS*, 772 F. Supp. 2d 1339, 1342 (W.D. Wash. 2011), *aff'd* 683 F.3d 1030 (9th Cir. 2012). In 1991, the agency issued a legislative rule through notice and comment rulemaking that defines extraordinary ability to mean "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor." 56 Fed. Reg. 60,897, 60,906 (INS) (Nov. 29, 1991) (codified at 8 C.F.R. § 204.5(h)(2)). In the preamble to the final rule, the agency indicated that "extraordinary ability" is a higher standard than "exceptional ability," which is the lest stringent standard for the second

---

[3] Under the Homeland Security Act of 2002, Congress abolished the Immigration and Naturalization Service (INS). *See* Pub. Law No. 107-296, § 471 (Nov. 25, 2002).

[4] Because aliens may file self-petitions under the extraordinary ability category, the petitioner and the beneficiary may be identical, as in this case.

preference category under 8 U.S.C. § 1153(b)(2)(A).  *Id.* at 60,898.  To meet the more strict

definition of extraordinary ability, the petitioner must submit evidence that she "has sustained

national or international acclaim and that his or her achievements have been recognized in the

field of expertise," 8 C.F.R. § 204.5(h)(3), including documentation of a one-time achievement

(that is, a major, internationally recognized award) or at least three of the following:

> (i) Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;
> (ii) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;
> (iii) Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation;
> (iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;
> (v) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;
> (vi) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;
> (vii) Evidence of the display of the alien's work in the field at artistic exhibitions or showcases;
> (viii) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;
> (ix) Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or
> (x) Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.

8 C.F.R. § 204.5(h)(3)(i)-(x); *see also Matter of Price*, 20 I. & N. Dec. 953, 954 (Acting Assoc.

Comm'r 1994).

After the petitioner files her I-140 petition, USCIS follows a two-step analysis of the

petitioner's documentation by first determining whether the petitioner provides evidence of a

one-time achievement or documents falling within at least three of the ten regulatory criteria.

*See Kazarian v. USCIS*, 596 F.3d 1115, 1121 (9th Cir. 2010).  If the petitioner provides evidence satisfying at least three criteria, USCIS next considers the totality of the evidence in making the final merits determination regarding the alien's qualifications and achievements.  *See* USCIS *Adjudicator's Field Manual* § 22.2(i)(i)(A);[5] *Noroozi v. Napolitano*, 905 F. Supp. 2d 535, 539 (S.D.N.Y. 2012) (noting that USCIS acquiesces in *Kazarian's* holding that the regulations establish a two-step analysis).  The petitioner's documentation must demonstrate a "sustained national or international acclaim" to qualify for the extraordinary ability designation.  8 U.S.C. § 1153(b)(1)(A)(i); *Rijal*, 772 F. Supp. 2d at 1343.  The petitioner's documentation must also establish that she is one of a small percentage who has risen to the very top of their field of endeavor.  *See* 8 C.F.R. § 204.5(h)(2); *Noroozi*, 905 F. Supp. 2d at 538.

If USCIS denies the I-140 petition, the petitioner may appeal the decision to USCIS's Administrative Appeals Office (AAO).  *Compare* 8 C.F.R. § 103.3(a)(1)(iii) *with* § 204.5(n)(2).  The AAO has *de novo* authority to hear appeals of denied immigrant visa petitions, and may address issues not raised during the initial adjudication.  *See Soltane v. U.S. Dept. of Justice*, 381 F.3d 143, 145-46 (3d Cir. 2004); *Taco Especial v. Napolitano*, 696 F. Supp. 2d 873, 779 (E.D. Mich. 2010).  The AAO's decision constitutes the final agency action for purposes of judicial review.  *See Herrera v. USCIS*, 571 F.3d 881, 885 (9th Cir. 2009).

---

[5]  Available at:  http://www.uscis.gov (use "Laws" hyperlink; then use "Immigration Manuals, Handbooks and Guidance" hyperlink).  USCIS amended this section of the *Adjudicator's Field Manual* by memorandum, dated December 22, 2010.  *See* http://www.uscis.gov/USCIS/Laws/Memoranda/i-140-evidence-pm-6002-005-1.pdf.

## FACTS AND COURSE OF PROCEEDINGS

Visinscaia is a native and citizen of Moldova.  Administrative Record (AR) 519.[6]  On

August 5, 2011, Visinscaia was admitted to the United States as an F-1 student for the purpose of

attending the Northern Virginia Community College in Annandale, Virginia.  AR 470, 525-26.

On May 3, 2012, Visinscaia filed a Form I-140 petition with USCIS seeking classification as an

alien of extraordinary ability based on her work in the area of competitive ballroom dancing.  AR

469, 532, 807-808.  As evidence of Visinscaia's qualifications, she submitted dancing awards,

published material about her performances, documents purporting to establish her original

artistic contributions and her artistic exhibitions, and documents purporting to show her leading

and critical role.  AR 478-79.

As evidence of significant awards in her area, Visinscaia submitted documents showing

her receipt of the World Dancesport Championship in the Juniors II category on April 23, 2005.

AR 550-52, 562, 568.  She also provided a listing of additional competitions in which she

participated along with her ranking for each event.  AR 600-609, 632-35, 760-61, 809-810.  As

evidence of published materials about Visinscaia's achievements, she provided several articles

appearing in the *Sport Curier*, a sports newspaper published in Moldova.  AR 657-703.  She also

provided transcripts of her television appearances on Moldova 1.  AR 642-56.  In addition,

Visinscaia provided support letters from various dance professionals purporting to outline her

original contributions and her leading and critical role in her field of endeavor.  AR 570-71

(Gozen letter); 757-58 (Oreschina letter); 760-61 (Mustuc letter); 809-10 (Oreschin letter).

---

[6]  On July 30, 2013, as provided under the local rules (Comment to LCvR 7(n)), Defendants filed
the complete, certified administrative record with the Court and served a copy on Plaintiff's
counsel.  *See* ECF Nos. 11-12.  In addition, pursuant to local rules, Defendants' statement of the
facts relies on the certified administrative record.  *See* LCvR 7(h)(2).

### A.  USCIS's Request for Evidence

On May 11, 2012, USCIS issued a request for evidence (RFE) to Visinscaia.  AR 2.  The

agency asked for clarification regarding Visinscaia's purported area of extraordinary ability,

based on her statement that she intended to work in the United States as a competitive dancer and

as a dance instructor.  AR 3; *see also* AR 758 (offer of employment as a "dance instructor" at the

Fred Astaire Dance Studio); 807-808 (Visinscaia's discussion of her role as an "instructor").

The agency also asked for documentation establishing that Visinscaia's admission to the United

States to work in her field of endeavor would substantially benefit the United States.  AR 3.

After addressing these threshold issues, USCIS outlined the two-part analysis structuring

its evaluation of Visinscaia's documentation.  AR 3-4.  The agency stated that it would first

determine whether Visinscaia submitted evidence to show that she received a one-time

achievement or alternatively provided documentation fitting into at least three of the ten criteria

listed under the extraordinary ability regulation.  AR 4.  The agency further stated that if

Visinscaia met this threshold requirement, the agency would then determine whether her

documentation demonstrates that she has sustained national or international acclaim and that her

achievements are recognized as one of a small percentage of individuals who have risen to the

very top of her filed of endeavor.  AR 4.

Applying this analytic paradigm, USCIS first addressed whether Visinscaia submitted

evidence of one-time achievement.  AR 5.  The agency expressed doubt that her receipt of the

World Dancesport Championship in the Juniors II category qualified as a major, internationally

recognized award under the regulation because the record lacked evidence that this award is

global in scope and internationally recognized.  AR 5; *see also* 8 C.F.R. § 204.5(h)(3).  USCIS

requested additional evidence to establish Visinscaia's claim that the World Dancesport

Championship award is an internationally recognized award.  AR 5-6.

Addressing the alternative criteria under the regulation, USCIS expressed doubt that

Visinscaia's documentation fit within any of the requisite categories.  For example, USCIS

pointed out that the documents showing media coverage of Visinscaia did not constitute

published material "about" Visinscaia because the media articles simply mentioned her in

passing or as part of a group of dancers in several performances.  AR 7; *see also* AR 662-63,

668-69, 679, 694-95.  Some of the articles specifically mentioned Visinscaia, but are very short

in length.  AR 7; *see also* AR 666, 682.  USCIS stated that "[m]ere mention of the beneficiary's

name in an article does not make the article 'about' her as required by the regulatory criterion."

AR 7; *see also* 8 C.F.R. § 204.5(h)(3)(iii).  In any event, USCIS noted that Visinscaia failed to

provide documentation relating to the circulation of the various publications at issue and the

intended audience, as required by regulation.  AR 7.  USCIS requested further documentation on

these points.  AR 7.

Additionally, USCIS requested further evidence relating to Visinscaia's original artistic

contributions, because the reference letters that she provided did not give "any specific examples

of how [her] expertise has been an original contribution of major significance to the field, which

is a required element under the regulation."  AR 8; *see also* 8 C.F.R. § 204.5(h)(3)(v).  Although

the letters noted Visinscaia's specific dance style, they did not establish how her skills have

impacted the field.  AR 8; *see also* AR 570-71, 757-58, 760-61, 809-10.  Similarly, USCIS noted

that these letters failed to establish that Visinscaia performed a leading or critical role for

organizations that have distinguished reputations.  AR 9; *see also* 8 C.F.R. § 204.5(h)(3)(viii).

Finally, USCIS requested evidence to demonstrate that Visinscaia's performances qualify as

artistic exhibitions or showcases, as required by the regulation.  AR 9; *see also* 8 C.F.R. § 204.5(h)(3)(vii).

Based on a review of Visinscaia's documentation, USCIS determined that her initial documentation failed to fall within at least three of the ten regulatory criteria.  AR 10.  USCIS provided Visinscaia with eighty-seven days to submit additional information or documentation to establish that she qualified for classification under the extraordinary ability category.  AR 11.  In closing, USCIS noted that it must first evaluate whether the evidence fits into at least three of the ten regulatory criteria, and if so, the agency would then "evaluate all of the evidence in the record to make a final merits determination of whether or not the petitioner, by a preponderance of the evidence, has demonstrated that [she] has sustained national or international acclaim and that [her] achievements have been recognized in the field of expertise."  AR 11.

Visinscaia, through counsel, responded to USCIS's RFE by providing additional documentation along with a brief arguing that USCIS's preliminary determination in the RFE was erroneous.  AR 27-53.  Visinscaia provided a letter clarifying her area of expertise, including dance performance and coaching, and evidence of a second offer of employment as a dance instructor.  AR 73-75, 80-81 (letter from Dance Factor Ltd.).  In addition, she provided certificates for dance awards issued by organizations under the International DanceSport Federation (IDSF).  AR 33-38.  Visinscaia also disputed USCIS's preliminary determination that her television appearances and news articles covering her performances did not constitute published material "about" the petitioner.  AR 39-41.

In response to USCIS's concern that Visinscaia had not provided sufficient evidence addressing her original artistic achievements, Visinscaia provided two additional letters of support from professional dancers and letters from her students.  AR 41, 47-50, 277-79

(Pilipenchuk letter), 286-88 (Davies letter).  According to one support letter, Visinscaia's original contribution to her field was her use of "certain weight transfer techniques which allow her to preserve her sterling technique and form, particularly through individual transition pieces." AR 278.  The second support letter stated that Visinscaia's technique is "now being widely adopted by other competitors."  AR 287.  Visinscaia's former students discussed her skill as a coach and their achievements under her tutelage.  AR 291, 307.

Visinscaia also provided documents purporting to establish that Club Codreanca is an organization of distinguished reputation and Visinscaia's critical role in the organization.  AR 51, 413-420.  In addition, she provided documents to show that the National Palace of Moldova in Chisinau is a venue for artistic performances.  AR 50.

### B.  USCIS's Denial of Visinscaia's I-140 Petition

On August 17, 2012, after reviewing Visinscaia's additional submissions and her counsel's legal arguments, USCIS determined that she failed to provide evidence of a one-time achievement or documents falling within at least three of the ten regulatory criteria for extraordinary ability.  AR 429, 438.  USCIS noted that it reviewed the evidence under the two-part analysis in *Kazarian v. USCIS*, 596 F.3d 1115 (9th Cir. 2010), by first considering Visinscaia's evidence to determine whether it fit within the regulatory provisions.  AR 431.  Since she failed to meet the threshold showing of a one-time achievement or provide evidence fitting within at least three of the ten regulatory criteria, USCIS did not engage in a merits analysis of her documents under the second step of *Kazarian*.  AR 438.

USCIS agreed that Visinscaia won first place at the 2005 International DanceSport Federation World Junior II Ten Dance Championship, but the agency found that this award did not constitute a one-time achievement similar to internationally recognized awards like the

Pulitzer Prize, an Academy Award, or an Olympic Medal.  AR 432.  Turning to the alternative

criteria for demonstrating extraordinary ability, USCIS agreed that Visinscaia presented

published materials about her performances.  AR 434.  But upon inspection of the remaining

documentation, USCIS determined that she failed to present evidence fitting into at least two

other regulatory criteria to warrant a merits analysis of her case as a whole.  AR 438.

USCIS noted that Visinscaia did not provide evidence that she made an original artistic

contribution to her field because her reference letters failed to discuss in any detail her specific

techniques or skills in dancing.  AR 435-36.  The reference letters noted that Visinscaia is a

skilled performer with several awards, but they did not show how her talent and technique

changed or influenced her field of endeavor.  AR 436.  Similarly, the reference letters did not

indicate how Visinscaia performed a leading or critical role at Club Codreanca beyond merely

playing a supporting role in conjunction with thirty other instructors at the organization.  AR

437.  Moreover, Visinscaia's documents relating to National Palace of Moldova did not evidence

any of her performances at this venue, so she failed to provide support for the assertion that her

work has been showcased at artistic exhibitions.  AR 436.

### C.  The AAO's Decision Upholding USCIS's Denial

On September 17, 2012, Visinscaia, through counsel, filed an appeal of USCIS's decision

with the AAO.  AR 441-443.  Visinscaia contended on appeal that USCIS applied the incorrect

standard of review when evaluating her documentation.  AR 442.  Visinscaia also argued that the

agency erred in contrasting her 2005 World DanceSport award to the Nobel Prize and other

major awards.  AR 456.  Visinscaia contended that her dance award was a major, international

award, as contemplated in the regulation.  *Id*.  Alternatively, although USCIS recognized that

Viscinscaia provided documents showing media coverage of her performances, she argued that

USCIS erred by failing to consider her remaining documents as falling within at least two other regulatory criteria.  AR 457-65.

On January 22, 2013, after conducting a *de novo* review of the administrative record, the AAO upheld USCIS's denial of Visinscaia's Form I-140 petition.  AR 842-855.  The AAO agreed with some of USCIS's conclusions and disagreed with others, but the AAO concluded upon a complete review of the record that Visinscaia failed to show a qualifying one-time achievement, and alternatively she failed to provide documents fitting into at least three of the regulatory criteria to warrant a final merits analysis.  AR 855.

The AAO first addressed Visinscaia's contention that USCIS applied a more stringent standard of review than the preponderance of the evidence.  AR 845.  The AAO noted that binding precedent defines the preponderance of the evidence standard as "more likely than not," which means that the agency should accept a petitioner's factual assertion if the underlying fact is "probably" true.  AR 845; *see also Matter of Chawathe*, 25 I. & N. Dec. 369, 375 (AAO 2010).  The AAO noted that the preponderance of the evidence standard does not relieve the petitioner of her duty to submit documents required by the regulation, and USCIS is still responsible for determining whether the petitioner's documents satisfy the regulatory definitions.  AR 845.  The AAO went on to discuss in detail why USCIS's overall evaluation of Visinscaia's documents was correct under the preponderance of the evidence standard.  AR 846-854.

The AAO's first addressed Visinscaia's argument that USCIS erred by setting the standard too high for defining a one-time achievement.  AR 846.  The AAO disagreed with Visinscaia's argument because USCIS properly looked to the legislative history where the House Report mentioned the Nobel Prize as an example of a one-time achievement.  AR 847; *see also* H.R. Rep. No. 101-723, part 1, at 59 (Sept. 19, 1990) ("Recognition can be through a one-time

achievement such as receipt of the Nobel Prize.").  Based on this example, the AAO stated that "the award must be internationally recognized in the alien's field as one of the top awards in that field."  AR 848.  The AAO acknowledged that lesser awards might qualify as a one-time achievement, but the award must in any event be a "major, international recognized award."  AR 847; *see also* 8 C.F.R. § 204.5(h)(3).  Because Visinscaia's first place award in the Junior II Ten Dance Category "was not reported in top international media[,] the competition was limited to those younger than 15 years of age and was not open to the petitioner's entire field," the AAO determined that USCIS was correct in concluding that the award was not a major, international award.  AR 848.

Although the AAO agreed with USCIS that Visinscaia's Junior II Ten Dance award was not a "one-time award," it disagreed with USCIS's conclusion that her award did not qualify as a "lesser" national award under one of the ten regulatory criteria.  AR 848.  Nevertheless, the regulation requires that the petitioner document at least two lesser, nationally recognized awards because the regulation speaks of these accomplishments in the plural.  *Id.*; 8 C.F.R. § 204.5(h)(3)(i) ("Documentation of the alien's receipt of lesser nationality or internationally recognized *prizes* or *awards*) (emphasis added).  On this point, the AAO agreed with USCIS that Visinscaia failed to document at least two nationally recognized awards.  AR 850.  The AAO noted that the petitioner must establish the receipt of nationally recognized awards by documenting that the field as a whole is aware of and recognizes the significance of the awards.  AR 848.  After reviewing the internet and media coverage along with Visinscaia's support letters, the AAO concluded that her other dance awards did not qualify as nationally recognized awards because the record contains "no documentary evidence demonstrating that the petitioner's competition placements are recognized beyond the presenting organizations,

danceplaza.com or spaeker.de, and are therefore commensurate with nationally or internationally recognized prizes or awards for excellence in the field." AR 849. As the AAO noted, the record contained no evidence that the web pages had national readership or that the *Sports Curier*, which also covered her performances, had wide scale circulation. AR 849-50.

The AAO also reviewed Visinscaia's support letters and agreed with USCIS that the letters did not provide specific information relating to the impact of Visinscaia's dance technique on the field as a whole. AR 851-52. The AAO noted that the regulatory requirement of demonstrating the "major significance" of the petitioner's contributions means that the petitioner's work must significantly impact her field of endeavor. AR 851; 8 C.F.R. § 204.5(h)(3)(v). The AAO agreed that many of Visinscaia's support letters remarked on her unique dance technique, but none of the letters provided any detail about other instructors using her technique or whether other top competitors have adopted it. AR 851. Yet, even if Visinscaia's weight transfer dance technique has impacted the field, the regulation requires a showing of at least one other major contribution to the field, as the regulation speaks in the plural. AR 852.

Similarly, Visinscaia's support letter from Petru Gozun, the founder of Dance Sport Club Codreanca, did not establish that Visinscaia served in a leading or critical role for the organization. AR 854. The letter did not "specify[] how the petitioner contributed to the organization in a way that is significant to the organization's outcome or what role she played in the organization's activities." *Id*. In any event, throughout the proceedings, Visinscaia only cited a single example of her role in one organization, but the regulation requires the showing of a leading or critical role in at least two organizations. *Id*.; 8 C.F.R. § 204.5(h)(3)(viii) ("leading or critical role for *organizations* or *establishments*") (emphasis added).

Finally, the AAO agreed with USCIS that Visinscaia failed to provide documents establishing that her work has been displayed at artistic exhibitions or showcases.  AR 853; *see also* 8 C.F.R. § 204.5(h)(3)(vii).  The AAO interpreted this regulatory criterion to mean that Visinscaia's work must have been displayed at multiple exhibitions, which would not include her own performances, because this regulatory criterion is limited to visual exhibitions displaying the petitioner's work.  AR 853.  Because Visinscaia did not present any evidence that her performances were displayed at exhibitions or showcases, she failed to satisfy this regulatory requirement.  *Id.*

On February 21, 2013, Visinscaia filed a complaint with this Court seeking review of the AAO's decision under the Administrative Procedure Act.  ECF No. 1, ¶¶ 5, 34-35.  She claims that the AAO erred by "deviating from established USCIS policy and regulations and the directives outlined in the Court's decision in *Kazarian*."  *Id.* ¶ 31.  Visinscaia also claims that USCIS held her to "a higher evidentiary standard than the required 'preponderance of the evidence standard' established by USCIS policy and regulations."  *Id.* ¶ 32.  Finally, she claims that USCIS "failed to make a meaningful or reasoned analysis of [her] evidence under the evidentiary framework established by the December 2010 policy memorandum."  *Id.*

On June 24, 2013, Defendants filed their answer, *see* ECF No. 8, and the Court subsequently ordered the parties to file a joint proposed briefing schedule, *see* ECF No. 9.  On July 17, 2013, the parties proposed filing cross-motions for summary judgment on September 9, 2013, and cross-responses by September 30, 2013.  *See* ECF No. 10.

## ARGUMENT

Summary judgment is the proper mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record and consistent with the standard

of review under the Administrative Procedure Act (APA).  *See Loma Linda Univ. Med. Ctr. v. Sebelius*, 684 F. Supp. 2d 42, 52 (D.D.C. 2010).  But due to the limited role the Court plays in reviewing the administrative record, the typical summary judgment standards set forth in Federal Rule of Civil Procedure 56 are not applicable.  *See Stuttering Found. of Am. v. Springer*, 498 F. Supp. 2d 203, 207 (D.D.C. 2007).  Rather, "[u]nder the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas 'the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'"  *Id.* (quoting *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769-70 (9th Cir. 1985)).  In other words, "when a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal," and "[t]he 'entire case' on review is a question of law."  *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (footnote and citations omitted).[7]

Under the APA, the Court may review a challenge to a final agency action by an aggrieved party, *see* 5 U.S.C. §§ 702, 704, but the Court may only set aside a final agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A).  The arbitrary and capricious standard of review governs the Court's review of an agency's decision in the absence of an alternative standard in the agency's organic statute. *See Friedman v. Sebelius*, 686 F.3d 813, 827 (D.C. Cir. 2012); *River Street Donuts v. Napolitano*, 558 F.3d 111, 117 (1st Cir. 2009) (arbitrary and capricious standard governs review of USCIS's denial of an employment-based petition).  This is a "deferential" standard, *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 658 (2007), which "presume[s]

---

[7]  Regarding the appropriate standard of review in APA cases, the local rules provide "that in cases where review is based on an administrative record the court is not called upon to determine whether there is a genuine issue of material fact, but rather to test the agency action against the administrative record."  Comment to LCvR 7(h).

the validity of agency action," *Southwestern Bell Tel. Co. v. FCC*, 168 F.3d 1344, 1352 (D.C. Cir. 1999), and precludes the Court from substituting its judgment for that of the agency, *see Rural Cellular Ass'n v. FCC*, 588 F.3d 1095, 1105 (D.C. Cir. 2009).  The Court "will not disturb the decision of an agency that has examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Americans for Safe Access v. DEA*, 706 F.3d 438, 449 (D.C. Cir. 2013) (quotations and citation omitted).

Viscinscaia advances three arguments challenging the AAO's final determination that she failed to qualify as an alien of extraordinary ability.  ECF No. 1, ¶¶ 31-32.  As explained below, Viscinscaia cannot demonstrate under any of these claims that the AAO's decision is arbitrary and capricious because the agency adequately explained its conclusion that her documents failed to satisfy the regulatory requirements, and the agency's analysis is supported by the administrative record.

### A.  USCIS Did Not Deviate From Binding Law

Visinscaia first claims that USCIS deviated from established "policy and regulations and the directives outlined in the Court's decision in *Kazarian* which has been incorporated into USCIS' December 2010 policy memorandum." *Id*. ¶ 31.  This claim fails because the USCIS's request for evidence, initial denial, and the AAO's final decision show that the agency applied the *Kazarian* analysis in evaluating Visinscaia's documents.  But even if USCIS departed from the analysis in *Kazarian*, that decision is not binding in this Circuit.  In addition, Visinscaia's claim turns on the mistaken assumption that a policy guidance document is legally binding on agency adjudicators and judicially enforceable against the agency.  The December 2010 policy memorandum outlines a suggestion about how adjudicators should exercise their discretion when

adjudicating extraordinary ability petitions.  It does not dictate a specific result or mandate that adjudicators evaluate the evidence is a specific manner.  Therefore, even if USCIS departed from the policy memorandum, this supposed "error" is not a cognizable claim under the APA.

At each stage in the evaluation of Visinscaia's case, USCIS stated that it would follow the *Kazarian* two-part analysis when reviewing her supporting documents.  AR 3-4 (RFE), 431 (USCIS's denial letter), 844 (AAO decision).  In *Kazarian*, the Ninth Circuit held that the extraordinary ability regulations require the agency to determine as a threshold matter whether the petitioner filed documents fitting within at least three of the ten criteria for evaluating eligibility.  *See* 596 F.3d at 1121.  If the petitioner satisfies this threshold requirement, the agency must then evaluate the weight of the documents to determine whether they show that the petitioner is at the very top of his or her field of endeavor.  *Id*.  The agency employed this two-step analysis in this case.

In USCIS's denial letter, it indicated that "[i]n reviewing this petition, USCIS will first consider the evidence in relation to the plain language of the [regulation]," and if the evidence fits within three of the ten regulatory criteria, "USCIS will then consider the evidence in the context of a final merits determination."  AR 431.  Similarly, the AAO's final decision summarized the *Kazarian* decision and stated that the agency must first count the types of evidence provided before weighing the evidence during a final merits determination.  AR 844. Yet, after counting the evidence and determining that Visinscaia failed to provide documents fitting within at least three of the ten criteria, USCIS and the AAO denied her petition without weighing the value of each document in terms of its weight for establishing Visinscaia's purported extraordinary ability.  AR 438, 855.  The pattern of the agency's analysis fits squarely within the *Kazarian* paradigm, which recognized that USCIS must evaluate each of the

documents to ensure that they fit within the appropriate regulatory category. *See Kazarian*, 596

F.3d at 1122 (holding that it was not arbitrary and capricious for the AAO to reject a document

as falling within one of the regulatory categories where the document did not indicate that the

contributions had major significance). Thus, Visinscaia's argument that the agency failed to

follow *Kazarian* has no merit.

However, if USCIS failed to follow the two-step process under *Kazarian*, this does not

constitute a cognizable claim under the APA. First, the agency is not bound by the *Kazarian*

decision in the D.C. Circuit, and the fact that the agency stated that it would follow the *Kazarian*

decision does not require this Court to defer to the agency's statement as a legally binding

interpretation of its own regulation. *See Holland v. Nat'l Mining Ass'n*, 309 F.3d 808, 817-18

(D.C. Cir. 2002). Neither the plaintiff nor the agency may advance the argument that this Circuit

is bound by the *Kazarian* decision. *Id*. at 815. Moreover, the *Kazarian* decision is not "law"

binding on the agency in this Circuit for purposes of determining whether the agency acted "in

accordance with law" in terms of the APA's standard of review. *Id*. at 814-15. Therefore, if the

agency had departed from the rule adopted under *Kazarian*, this departure is not a basis for

finding the agency's decision arbitrary and capricious.

Similarly, Visinscaia's claim that USCIS failed to follow a "policy" in this case is not

cognizable under the APA. As a threshold matter, the policy memorandum discussing the

*Kazarian* decision is not binding on the agency because it lacks the proper "P" suffix designation

to mark it as a mandatory directive to agency adjudicators. *Compare* USCIS, *Evaluation of*

*Evidence Submitted with Certain Form I-140 Petitions*, PM-602-0005.1 (Dec. 22, 2010) (Exhibit

A), *with* USCIS, *Adjudicator's Field Manual* § 3.4(a) (only memoranda and cables from

headquarters specifically designated as policy "bearing the 'P' suffix in the reference file

number" are binding)).[8]  Because the December 2012 policy memorandum lacks the required

"P" designation, the policy memorandum is only guidance to adjudicators regarding how they

should structure their inquiry in extraordinary ability cases.  *See Broadgate v. USCIS*, 730 F.

Supp. 2d 240, 246 (D.D.C. 2010) (only USCIS policy memoranda with a "P" designation are

binding on agency adjudicators).  As a result, the December 2010 policy memorandum is not an

independent source of legal authority on which Visinscaia may rely to show that USCIS's

decision is arbitrary and capricious.  *See The Wilderness Society v. Norton*, 434 F.3d 584, 595-96

(D.C. Cir. 2006); *Vietnam Veterans of Am. v. Secretary of the Navy*, 843 F.2d 528, 537 (D.C. Cir.

1988) ("A binding policy is an oxymoron.").  Thus, Visinscaia's argument that USCIS departed

from its policy guidance, even if true, does not establish a cognizable claim under the APA.

### B.  USCIS Engaged in a Reasoned Analysis of the Record Evidence

Visinscaia also alleges that USCIS did not consider key evidence in the record and failed

to engage in a meaningful analysis of her documentation.  ECF No. 1, ¶ 32.  Visinscaia's

allegation fails in the face of the agency's extensive consideration of the record evidence and its

reasoned discussion of her supporting documents.

Visinscaia's claim that the agency ignored her documents is belied by the fact that the

agency revised its assessment of her evidence after it considered her arguments in response to the

initial request for evidence, and then again on administrative appeal.  After considering

Visinscaia's arguments regarding the media coverage of her dance performances, USCIS agreed

that she provided documentation of published material about her work.  AR 434, 850.  Similarly,

the AAO agreed with Visinscaia's argument that her first place award in the Junior II Ten Dance

Category qualified as a lesser, national award.  AR 846-47.  Nonetheless, USCIS's analysis of

---

[8]  The *Adjudicator's Field Manual* and the agency's December 2010 policy memorandum are available at:  http://www.uscis.gov (use the "Laws" hyperlink).

the remaining documents at the initial adjudication stage and during administrative appeal

revealed that she failed to provide the required documentation fitting into at least three of the ten

regulatory criteria.  AR 848-854.  The AAO's extensive discussion of the relevant issues through

examples drawn from Visinscaia's support letters and other documents shows a thorough

reasoning through the issues, which more than satisfies the lenient arbitrary and capricious

standard of review.  *See City of Colorado v. Solis*, 589 F.3d 1121, 1134 (10th Cir. 2009).

Visinscaia cannot show that the agency failed to consider her documentation or

adequately address relevant factors in connection with her contention that she possesses a major,

internationally recognized award.  *See* 8 C.F.R. § 204.5(h)(3).  The AAO disagreed with

Visinscaia's contention because the AAO consulted legislative history for guidance and found

that the House Report mentioned the Nobel Prize as an example of a one-time achievement.  AR

847; *see also* H.R. Rep. No. 101-723, part 1, at 59 (Sept. 19, 1990) ("Recognition can be through

a one-time achievement such as receipt of the Nobel Prize.").  Based on this example, the AAO

stated that "the award must be internationally recognized in the alien's field as one of the top

awards in that field."  AR 848.  Because Visinscaia's first place award in the Junior II Ten Dance

Category "was not reported in top international media[,] the competition was limited to those

younger than 15 years of age and was not open to the petitioner's entire field," the AAO

determined that the award was not a major, international award.  AR 848.

As the Court in *Rijal v USCIS*, 772 F. Supp. 2d 1339, 1345 (W.D. Wash. 2011),

discussed, the question of whether an alien's award qualifies as a major, international award is

not amenable to easy resolution.  But Congress entrusted this decision to USCIS, *see* Pub. Law

No. 107-296, § 451(b)(1), which means that this issue is to be worked out through the empiric

process of administration, *see Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 194 (1941); *Rijal*,

772 F. Supp. 2d at 1346 (Congress "entrusted that decision to the administrative process").  In this case, USCIS evaluated Visinscaia's award in terms of the lack of international media coverage and the limited age category of the award.  AR 848.  The Court cannot reweigh the evidence in the administrative record, despite Visinscaia's characterization that the documentary evidence is not in dispute.  *See Gray v. Powell*, 314 U.S. 402, 412 (1941).  The Court must defer to the significance that the agency places on the facts in the record.  *See United Steel, Paper and Forestry v. PBGC*, 707 F.3d 319, 324 (D.C. Cir. 2013).  The Court can only evaluate whether the agency considered the documents in the record and provided a reasonable explanation for its decision, *id*. at 325, but as in the *Rijal* case, USCIS explained here why the lack of international media coverage and other factors were significant in the rejection of Visinscaia's award, *compare* AR 847-48, *with Rijal*, 772 F. Supp. 2d at 1345.

The AAO's assessment of the remaining issues also comports with the requirement for reasoned decision making.  Although the AAO determined that Visinscaia's Junior II Ten Dance award was not a "one-time award," it concluded that her award qualified as a "lesser" national award under one of the ten regulatory criteria.  AR 848.  Nevertheless, the AAO noted that the regulation requires the petitioner to document at least two lesser, nationally recognized awards because the regulation speaks of these accomplishments in the plural.  *Id*.; 8 C.F.R. §204.5(h)(3)(i) ("Documentation of the alien's receipt of lesser nationality or internationally recognized *prizes* or *awards*) (emphasis added).  On this point, the AAO determined that Visinscaia failed to document at least two nationally recognized awards.  AR 850.  The AAO noted that the petitioner must establish the receipt of nationally recognized awards by documenting that the field as a whole is aware of and recognizes the significance of the awards.  AR 848.  After reviewing the internet and media coverage along with Visinscaia's support

letters, the AAO concluded that her other dance awards did not qualify as nationally recognized awards because the record contains "no documentary evidence demonstrating that the petitioner's competition placements are recognized beyond the presenting organizations, danceplaza.com or spaeker.de, and are therefore commensurate with nationally or internationally recognized prizes or awards for excellence in the field."  AR 849.  As the AAO noted, the record contained no evidence of the web pages had national readership or that the *Sports Curier*, which also covered her performances, had wide scale circulation.  AR 849-50.

In addition, the AAO also reviewed Visinscaia's support letters and determined that the letters did not provide specific information relating to the impact of Visinscaia's dance technique on the field as a whole.  AR 851-52.  The AAO noted that the regulatory requirement of demonstrating the "major significance" of the petitioner's contributions means that the petitioner's work must significantly impact her field of endeavor.  AR 851; 8 C.F.R. § 204.5(h)(3)(v).  The AAO agreed that many of Visinscaia's support letters remarked on her unique dance technique, but none of the letters provided any detail of whether other instructors use the technique or whether other top competitors have adopted it.  AR 851; *see also* AR 278 (Pilipenchuk letter), 287 (Davies letter).  Yet, even if Visinscaia's weight transfer dance technique has impacted the field, the regulation requires a showing of at least one other major contribution to the field, as the regulation speaks in the plural.  AR 852.

Similarly, Visinscaia's support letter from Petru Gozun, the founder of Dance Sport Club Codreanca, did not establish that Visinscaia served in a leading or critical role for the organization.  AR 854.  The letter did not "specify[] how the petitioner contributed to the organization in a way that is significant to the organization's outcome or what role she played in the organization's activities."  *Id*.  Without sufficient detail regarding Visinscaia's role at the

organization, it was reasonable for the AAO to reject the letter as satisfying one of the ten regulatory criteria.  *See Noroozi v. Napolitano*, 905 F. Supp. 2d 535, 544-45 (S.D.N.Y. 2012).  In any event, throughout the proceedings, Visinscaia only cited one example of her role in an organization, but the regulation requires the showing of a leading or critical role in at least two organizations.  *Id.*; 8 C.F.R. § 204.5(h)(3)(viii) ("leading or critical role for *organizations* or *establishments*") (emphasis added).

Finally, the AAO agreed with USCIS that Visinscaia failed to provide documents establishing that her work has been displayed at artistic exhibitions or showcases.  AR 853; *see also* 8 C.F.R. § 204.5(h)(3)(vii).  The AAO interpreted this regulatory criterion to mean that Visinscaia's work must have been displayed at multiple exhibitions, which would not include her own performances, because this regulatory criterion is limited to visual exhibitions displaying the petitioner's work.  AR 853.  Visinscaia did not present any evidence that her performances were displayed at exhibitions or showcases, so she failed to satisfy this regulatory requirement.  *Id.*

Because Visinscaia's challenge to the AAO's decision is fundamentally a dispute over the agency's weighing of the facts, her challenge must fail.  *See United Steel, Paper and Forestry*, 707 F.3d at 325.  The AAO's lengthy discussion of the evidence, replete with examples from the record, demonstrates that the agency engaged in reasoned decision making, which satisfies the lenient arbitrary and capricious standard of review.  *See Southwest Airlines v. TSA*, 650 F.3d 752, 756-57 (D.C. Cir. 2011).

### C.  USCIS's Decision Was Not Arbitrary and Capricious

Finally, Visinscaia claims that USCIS erred by holding her to a higher evidentiary burden than the required preponderance of the evidence standard.  ECF No. 1, ¶ 32.  Visinscaia's final

claim turns on the confusion between her burden of proof at the agency level and this Court's standard of review under the APA.

Visinscaia is correct that petitioners are required to show that they are qualified for an immigration benefit by a preponderance of the evidence. *See* 8 U.S.C. 1361; *Martinez*, 21 I. & N. Dec. at 1036. But she is incorrect in arguing that USCIS did not apply this standard in evaluating her documentation. AR 438 (citing the preponderance of the evidence standard), AR 845 (AAO's evaluation of the preponderance of the evidence standard). In any event, this focus on her burden of proof at the administrative level is irrelevant because this Court's standard of review, regardless of the evidentiary burden at the agency, is the arbitrary and capricious standard. *See Clark County, Nev. v. FAA*, 522 F.3d 437, 441 (D.C. Cir. 2008) (arbitrary and capricious review governs review of informal adjudications); Harry T. Edwards, *et al.*, *Federal Standards of Review* 203 (2d ed. 2013). In challenging the agency's weighing of the documentary evidence in this case, Visinscaia invites this Court to reweigh the evidence *de novo*, but this is not the Court's function under the APA. *See United Steel, Paper and Forestry v. PBGC*, 707 F.3d 319, 325 (D.C. Cir. 2013). The only question for the Court is whether there is relevant evidence in the record that a reasonable mind might accept as adequate to support the agency's conclusion. *Id.*; *cf. Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) ("the fact that the INS was required to prove Adefemi's deportability by clear and convincing evidence in the BIA does not make our review of the BIA's decision more stringent.").

The Ninth Circuit rejected an argument similar to the one advanced by Visinscaia in this case. In *United States v. Snoring Relief Labs*, 210 F.3d 1081, 1086 (9th Cir. 2000), the Ninth Circuit rejected the plaintiff's argument that the court should evaluate the evidence under the preponderance of the evidence standard because that standard governed administrative

proceedings.  The court rejected the plaintiff's argument because it would require the court to

review the agency's decision *de novo*.  210 F.3d at 1086.  The court made clear that the

"arbitrary and capricious standard of review cannot be replaced by the preponderance of the

evidence burden of proof."  *Id*.

The Court should reject Visinscaia's challenge to the agency's application of the burden

of proof at the administrative level, as the Ninth Circuit did in a similar situation, because her

claim requires the Court to weigh the evidence before the agency *de novo*, which is not permitted

under the APA.  *See United Steel, Paper and Forestry*, 707 F.3d at 325.  The only relevant

inquiry is whether the record evidence supports the agency's decision.  As outlined above, the

AAO's final decision shows that the agency considered Visinscaia's evidence and provided a

reasoned discussion why her documentation is deficient under the regulation.  AR 846-854.  The

agency's identification of the deficiencies in her documents satisfies the lenient APA standard of

review, even if one might draw two inconsistent conclusions from the evidence.  *See United

Steel, Paper and Forestry*, 707 F.3d at 325.

## CONCLUSION

Because the AAO's decision upholding the denial of Plaintiff's petition was adequately

explained and based on evidence in the record, the agency's decision was not arbitrary and

capricious and accordingly Defendants are entitled to judgment as a matter of law.

Respectfully submitted this 9th day of September, 2013:

STUART F. DELERY
Assistant Attorney General

GLENN M. GIRDHARRY
Senior Litigation Counsel

By:     */s/ Geoffrey Forney*
GEOFFREY FORNEY
Senior Litigation Counsel
United States Department of Justice
District Court Section
Office of Immigration Litigation
450 5th Street, NW
Washington, DC 20001
(202) 532-4329/ geoff.forney@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 9, 2013, I electronically filed the foregoing DEFENDANTS'

MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT with

the Clerk of Court by using the CM/ECF system, which will provide electronic notice and an

electronic link to this document to the following attorney of record:

Ladan Mirbagheri Smith
ladan@mirbagherismith.com


/s/ Geoffrey Forney
GEOFFREY FORNEY
Senior Litigation Counsel
United States Department of Justice