UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SVETLANA VISINSCAIA,<br><br>    Plaintiff,<br><br>    v.<br><br>RAND BEERS, *et al.*,<br><br>    Defendants. | Civil Action No. 13-223 (JEB) |

## MEMORANDUM OPINION

This case calls on the Court to decide whether Plaintiff Svetlana Visinscaia is a great ballroom dancer or merely a very good one. Visinscaia, a native and citizen of Moldova, was admitted to the United States on August 5, 2011, on an F-1 visa to attend community college in Virginia. Toward the end of her first year in this country, she filed a petition asking the United States Customs and Immigration Service to reclassify her as an "alien of extraordinary ability," a status that would allow her to remain here as a competitive dancer and coach. As evidence of her ability and renown as a dancer, Visinscaia submitted a number of published reports about her performances, as well as awards and letters from colleagues and students attesting to her leading role in the international "Dance Sport" community. USCIS nonetheless denied her application on the ground that she did not satisfy the statutory requirements for an extraordinary-ability visa.

After exhausting her administrative options, Visinscaia filed suit in this Court under the Administrative Procedure Act, alleging that the agency's denial was arbitrary and capricious and an abuse of discretion. The parties now cross-move for summary judgment. Although Visinscaia has produced impressive evidence of her successful career as a dancer and dance instructor, the Court cannot overturn the agency's reasoned judgment.

1

**I.     Background**

Visinscaia was born in Moldova. See Administrative Record at 519 (Plaintiff's Passport). Showing promise as a dancer from a young age, she began to compete – and do very well – in competitions throughout her country and in Eastern Europe generally. See AR 600-09 (Table Documenting Visinscaia's Finishes at International Competitions Beginning at Age 11). By 2005, the 15-year old had achieved a world-class ranking in the field of ballroom dance, and in that year she won her first – and, to this point, only – world championship in the World Dance Sport Federation Junior II Ten category. See AR 550-52 (Certificate Verifying 2005 Junior Championship). Having reached the end of the road on the juniors' circuit, Visinscaia continued to compete but also began serving as an instructor at a local dance academy. See AR 51 (Formal Complaint in Response to USCIS Request for Evidence). In 2011, she came to the United States to study in Sterling, Virginia. See AR 470 (Plaintiff's I-140 Petition).

Visinscaia began her quest for a new, long-term visa in May 2012, when she filed an I-140 petition for classification as an alien of extraordinary ability in the field of ballroom dance. See id. at 469. That Visinscaia would seek such status is unsurprising: federal law assigns applicants of extraordinary ability the highest priority among employment-based visa applicants, see 8 U.S.C. § 1153(b)(1)(A), and such aliens need not present evidence of a job offer from an American employer before they are granted a visa. Kazarian v. USCIS, 596 F.3d 1115, 1120 (9th Cir. 2010) (citing 8 C.F.R. § 204.5(h)(5)).

In her initial filing and in response to a request for further evidence from USCIS, Visinscaia produced documents purporting to show that she had achieved sustained success in her field, including national and international awards, publications chronicling her achievements,

2

letters of support from her students and coaches, and more. In light of the evidence, she argued, she qualified as an immigrant of extraordinary ability and deserved a visa. See Compl., ¶ 34.

After an impressively thorough review of Visinscaia's evidence, USCIS concluded that, despite her various awards, her achievements did not rise to the level necessary to obtain an extraordinary-ability visa. See AR 438 (USCIS Denial of Plaintiff's I-140 Application). As a result, it denied her application, and the agency's Administrative Appeals Office affirmed that decision on *de novo* review. See Compl., Exh. 4 (AAO Appeal Denial) at 14. In bringing suit, Visinscaia contends that the agency's final decision violates applicable law, and she asks the Court to vacate that decision and to direct the agency to declare her an alien of extraordinary ability. See Compl., ¶¶ 34-36. The parties have filed cross-motions for summary judgment, to which the Court now turns.

## II. Legal Standard

Plaintiff relies on the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, to challenge USCIS's denial of her visa application. Summary judgment is one mechanism for adjudicating claims under the APA. See Loma Linda Univ. Med. Ctr. v. Sebelius, 684 F. Supp. 2d 42, 52 (D.D.C. 2010). Due to the limited role federal courts play in reviewing administrative decisions, however, the typical Federal Rule 56 summary-judgment standard does not apply in such cases. See Sierra Club v. Mainella, 459 F. Supp. 2d 76, 89-90 (D.D.C. 2006) (citing Nat'l Wilderness Inst. v. United States Army Corps of Eng'rs, 2005 WL 691775, at *7 (D.D.C. 2005)). Instead, "the function of the district court is to determine whether or not . . . the evidence in the administrative record permitted the agency to make the decision it did." Id. (internal citations omitted). Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record and otherwise consistent with

the APA standard of review. See Bloch v. Powell, 227 F. Supp. 2d 25, 31 (D.D.C. 2002) (citing Richards v. INS, 554 F. 2d 1173, 1177 (D.C. Cir. 1977)).

The APA "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." FCC v. Fox Television Stations, Inc., 556 U.S. 502, 513 (2009). It requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under this "narrow" standard of review – which appropriately encourages courts to defer to the agency's expertise, see Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) – an agency is required to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Id. (internal quotation marks omitted). In other words, courts "have held it an abuse of discretion for [an agency] to act if there is no evidence to support the decision or if the decision was based on an improper understanding of the law." Kazarian, 596 F.3d at 1118.

It is not enough, then, that the court would have come to a different conclusion from the agency. See Nat'l Ass'n of Home Builders v. Norton, 340 F.3d 835, 841 (9th Cir. 2003). The reviewing court "is not to substitute its judgment for that of the agency," id., nor to "disturb the decision of an agency that has examine[d] the relevant data and articulate[d] . . . a rational connection between the facts found and the choice made." Americans for Safe Access v. DEA, 706 F.3d 438, 449 (D.C. Cir. 2013) (internal quotation marks and citation omitted). A decision that is not fully explained, moreover, may be upheld "if the agency's path may reasonably be discerned." Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974).

4

**III.     Analysis**

USCIS does not disagree that Visinscaia has been a successful competitive dancer for more than a decade. See, e.g., Def. Mot. at 13 (noting that AAO concluded that at least one of Visinscaia's dance awards was nationally recognized). Merely achieving success, however, is insufficient for someone to be granted extraordinary-ability status. Instead, to determine whether Visinscaia qualifies, the agency – and this Court – must interpret and apply § 203(b)(1)(A) of the Immigration and Nationality Act, codified at 8 U.S.C. § 1153. Although the INA does not define "extraordinary ability" beyond the general recognition that abilities in the "sciences, arts, education, business, or athletics" may qualify, see 8 U.S.C. § 1153(b)(1)(A)(i), the statute does provide some oblique guidance. "Sustained national or international acclaim" is a hallmark of extraordinary ability, for example, as are achievements that "have been recognized in the field through extensive documentation." Id. Federal regulations explain, further, that "extraordinary ability" can be defined as "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor." 8 C.F.R. § 204.5(h)(2).

The "extraordinary ability" designation is thus "extremely restrictive" by design. See Lee v. Ziglar, 237 F. Supp. 2d 914, 919 (N.D. Ill. 2002); see also id. at 915, 918 (finding that "arguably one of the most famous baseball players in Korean history" did not qualify for visa as baseball coach for Chicago White Sox). Still, evidence of extraordinary ability is not impossible to come by. See, e.g., Muni v. INS, 891 F. Supp. 440 (N.D. Ill. 1995) (finding that agency improperly discounted evidence for NHL hockey player who had won Stanley Cup three times, won "most underrated defenseman," and been paid more than average NHL player); Matter of Price, 20 I. & N. Dec. 953, 955-56 (BIA 1994) (granting visa petition of professional golfer who

5

won 1983 World Series of Golf and 1991 Canadian Open, ranked 10th in 1989 PGA Tour, collected $714,389 in 1991, and received widespread major media coverage).

To meet this strict definition, an alien must submit evidence that she has sustained national or international acclaim and that her achievements have been recognized in the field of expertise. See 8 C.F.R. § 204.5(h)(3). That evidence must include documentation of either (1) "a one-time achievement (that is, a major, international [*sic*] recognized award)," 8 C.F.R. § 204.5(h)(3); or (2) at least three of the ten types of lesser achievements enumerated in the regulations. See id. The Ninth Circuit – the only federal court of appeals to address the substance of an "extraordinary-ability" challenge – has held that the regulations set out a two-step test: If the alien satisfies her initial evidentiary burden – that is, if she proves that she has met either of the requirements of § 204.5(h)(3) – USCIS must then decide, in a "final merits determination" and weighing the documentation offered, whether the evidence demonstrates extraordinary ability. See Kazarian, 596 F.3d at 1120-21. In practice, USCIS has endorsed that holding. See USCIS Adjudicator's Field Manual § 22.2(i)(i)(A); Noroozi v. Napolitano, 905 F. Supp. 2d 535, 539 (S.D.N.Y. 2012) (noting that USCIS follows the Kazarian two-step method).

Plaintiff here argues that USCIS erred in three ways. First, she claims that the agency's finding that she lacked a qualifying "one-time" achievement was arbitrary and capricious. See Compl., ¶ 33; Pl. Mot. at 6-10. Second, she contends that it was error for USCIS to conclude that she had not satisfied at least three of the ten alternative evidentiary criteria. See Compl., ¶ 33; Pl. Mot. at 10-25. Third, Visinscaia maintains that USCIS inexplicably departed from established policies by failing to apply the Kazarian two-step method, which she argues the agency has adopted as formal policy. See Compl., ¶ 32; Pl. Opp. and Reply at 4.

As to the last point, the agency first responds that it is not bound by Kazarian, a Ninth Circuit case of no precedential value in this Circuit. See Def. Mot. at 17-19. The Court need not decide whether to follow Kazarian, however, because it agrees with USCIS that the agency appropriately applied the standard articulated in that opinion. Indeed, the initial adjudicator described Kazarian and its substantive holding several times in the course of his administrative review, and at every turn he explained how his analysis fit into that framework. More specifically, he first determined whether Visinscaia had submitted evidence to show that she had received a major, one-time award or, alternatively, that she satisfied three of the ten other criteria. See AR 3-4 (USCIS Request for Evidence); USCIS I-140 Denial at 431. Only then, he observed, could he determine whether her documentation demonstrated that she was an alien of extraordinary ability. See Request for Evidence at 4; USCIS I-140 Denial at 431. Because the agency concluded that Plaintiff had not succeeded on the first Kazarian step, it had no need to analyze the second. The Administrative Appeals Office repeated, adopted, and expanded upon the initial adjudicator's analysis. See AAO Appeal Denial at 4-16. Indeed, Visinscaia admits as much in her Cross-Motion, noting that the AAO said that "it [did] not need to explain its conclusion relating to the final merits determination." Pl. Mot. at 26 (emphasis added). The Court will thus confine its review to Visinscaia's first two challenges.

A. One-Time Achievement

In extraordinary-ability cases, the burden is on the petitioner to provide sufficient evidence of, among other things, a "one-time achievement (that is, a major, international [*sic*] recognized award)." 8 C.F.R. § 204.5(h)(3). Plaintiff claims that her first-place finish at the 2005 World DanceSport Federation Championship in the Junior II Ten Dance category constitutes such a one-time achievement that can satisfy her burden at this stage. See Compl., ¶

19; Pl. Mot. at 6. In its January 2013 decision, however, the AAO concluded that the 2005 Championship did not qualify as a major achievement within the meaning of the agency's regulations. The AAO disagreed with Visinscaia's argument, in part because its reading of the legislative history behind § 204 of the INA – which mentioned the Nobel Prize as an example of a major, one-time achievement, see H.R. Rep. No. 101-723, part 1, at 59 (Sept. 19, 1990) – suggested that "the award must be internationally recognized in the alien's field as one of the top awards in that field." AAO Appeal Denial at 9. Because (1) Visinscaia failed to produce evidence that her award was "reported in top international media" and (2) "the competition was limited to those younger than 15 years of age and was not open to the petitioner's entire field," the AAO determined that the award was neither internationally recognized nor one of the top awards in the field. In those circumstances, it could not qualify as a major international award for the purpose of the § 204 inquiry. Id. at 8-9.

In her Motion for Summary Judgment, Visinscaia takes issue with that conclusion, complaining that the agency improperly weighed the facts in the record. See Pl. Mot. at 11-13. In particular, she contends that the agency should have concluded that her 2005 Championship was a major prize because it was awarded by the World Dance Sport Federation, which the International Olympic Committee recognizes as the top Dance Sport organization. See id. In Plaintiff's view, the fact that the award-bestowing entity is a prominent, international organization is enough to render any of its awards "major" within the meaning of the INA and the associated regulations. The agency, however, determined that the prestige of the granting organization alone was not sufficient to outweigh other factors, including the lack of international media coverage and the age-restricted nature of the award. See AAO Appeal Denial at 7-8.

8

The parties, it is clear, disagree not about whether Visinscaia won the award she claims to have won, but rather about what constitutes a "major" international award for the purpose of the statute. Neither the plain meaning of the statute's words nor even common sense, unfortunately, is of much help to a court attempting to draw a line between "major" and "lesser" awards. See id. Critically, furthermore, nothing in the case law, the INA, or the regulations implementing the statute explains how USCIS or a reviewing court is to differentiate between the two classes of award. To be sure, in the debates leading to passage of the statute, one member of Congress named the Nobel Prize as an example of a major, internationally recognized award that would by itself demonstrate "extraordinary ability," Kazarian, 596 F.3d at 1119 (citing 1990 U.S.C.C.A.N. 6710, 6739). But not even USCIS claims that an alien must win a Nobel Prize to qualify. (Nor, for the record, does Plaintiff suggest that the 2005 Junior II Ten Championship is equivalent to the Nobel.) Which of humanity's thousands of other awards qualify as major international awards, then, is "a question that the law does not answer." Rijal v. U.S. Citizenship & Immigration Servs., 772 F. Supp. 2d 1339, 1345 (W.D. Wash. 2011), affirmatively adopted by 683 F.3d 1030 (9th Cir. 2012). It is, instead, a question that Congress – in classic form – entrusted to the administrative process to answer.

In reviewing that process, the Court looks for evidence that USCIS considered the relevant factors and articulated a rational connection between the facts it found and the choice it made. See Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43. The agency did just that. It explicitly considered the award and all of the evidence Visinscaia submitted to support her claim that it was a major international award and then articulated a rational connection between those facts and its conclusion that the award was not "major." First, it discounted the media coverage of the award, which amounted to one mention in a newspaper whose circulation is unknown (save for a

self-promotional letter from the publisher). See AAO Appeal Denial at 9. As other courts have noted, where an agency rejects evidence of a one-time achievement because that coverage "appears to be of local or national nature . . . [and] does not reflect . . . recogni[tion] by the general public," there is a rational connection between the facts and the agency's conclusion that award was not major. Rijal, 772 F. Supp. 2d at 1345. Adding to its case, the agency reasoned that an age-limited award in an esoteric field did not, on its face, look like a major award. See AAO Appeal Denial at 7. Indeed, if an adult alien were seeking a visa based on his previous world-class performance at pre-teen chess tournaments, USCIS would hardly be arbitrary in determining that such achievement was too limited.

In short, the agency did precisely what the law requires: using its expertise, it considered whether Visinscaia's award satisfied her burden under the regulations. It concluded that the award was not sufficient. That another decisionmaker might have come to a different conclusion matters little. Unless the court can conclude that <u>no</u> rational adjudicator would have come to the same conclusion – which it cannot do in this case – it must not disturb the agency's decision. See United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Pension Ben. Guar. Corp., 707 F.3d 319, 325 (D.C. Cir. 2013) (holding that where the record shows that the agency duly considered the record evidence and explained why it found the evidence lacking, the agency must prevail).

B. Alternative Criteria

Having failed to demonstrate a single major achievement, then, for Plaintiff to prevail, she must prove that she satisfies at least three of the ten other criteria listed in the regulations. See 8 C.F.R. § 204.5(h)(3). Visinscaia asserts that she clears the bar on four of those criteria. See Compl., ¶ 20: (1) "[o]riginal artistic and athletic contributions of major significance in the

10

field," id. § 204.5(h)(3)(v); (2) "perform[ance] in a leading or critical role for organizations or establishments that have a distinguished reputation," id. § 204.5(h)(3)(viii); (3) "display of the alien's work . . . at artistic exhibitions or showcases," id. § 204.5(h)(3)(vii); and (4) "receipt of lesser nationally or internationally recognized prizes or awards," id. § 204.5(h)(3)(i). (Plaintiff also alleges in her Complaint that she satisfies a fifth criterion – "[p]ublished material about the alien in professional or major trade publications or other major media," id. § 204.5(h)(3)(iii) – but she appears to have abandoned that argument on summary judgment, as she does not mention it in any of her briefs.)

To support her claims, Visinscaia submitted evidence in a number of forms. USCIS found such evidence insufficient, and Plaintiff challenges that decision. Unfortunately for Visinscaia, however, her contentions on this front suffer from many of the same infirmities discussed above.

       1. *Original Contribution*

Visinscaia first objects to USCIS's conclusion that she failed to prove that she has made an original contribution to her field. See Compl., ¶ 23; Pl. Mot. at 19-23. In support of her claim at the agency level, Visinscaia cited letters of support from numerous dance professionals outlining her purported original contributions, including her use of "certain weight transfer techniques which allow her to preserve her sterling technique and form, particularly through individual transition pieces." See AR 278 (Letter from Igor and Polina Pilipenchuk); see also AR 757-59 (Letter from Natalia Oreschina); AR 760-64 (Letter from Gherman Mustuc); AR 765-786 (Letters from Egor Abashkin and Katia Kanevskaya); AR 787-806 (Letter from Igor Dogoter and Natalia Gorshkova). She also provided documentation claiming generally that her technique is "now being widely adopted by other competitors," AR 287 (Letter from Bill

11

Davies), and by her students. See AR 291 (Letter from Vladlen Oleineac); AR 307 (Letter from Olga Grigorita).

The agency, however, concluded that none of these letters provided specific information relating to the impact of Visinscaia's dance technique on the field as a whole. See AAO Appeal Denial at 9-11. The AAO noted that the regulatory requirement that the petitioner demonstrate the "major significance" of any original contributions means that the petitioner's work must significantly affect her field of endeavor. See id. at 11 (citing 8 C.F.R. § 204.5(h)(3)(v)). It agreed that many of Visinscaia's support letters remarked on her unique dance technique, but it also observed that none – even those submitted in response to the agency's request for further evidence – provided any detail as to whether specific studios or academies now use the technique or whether specific top competitors have adopted it. Id. at 11.

Visinscaia, for her part, responds that the agency's decision was "arbitrary" because it did "not give[] any weight" to the letters. See Pl. Mot. at 21. Regarding the letters from other dancers, however, the agency concluded that without specific evidence that Visinscaia's techniques were being used by others in the field, the letters were of little value. See AAO Appeal Denial at 11. It similarly rejected the students' letters because they either did not mention Visinscaia's techniques or mentioned them only in passing. See id. In short, the agency did give some weight to the letters – just not the weight Visinscaia would prefer. In these circumstances, the Court cannot conclude that the agency's decision was arbitrary.

2. *Leading or Critical Role*

Similarly, the AAO concluded that Visinscaia failed to prove that she had played a leading or critical role as an instructor at Dance Sport Club Codreanca, see AAO Appeal Denial at 12-13, which Plaintiff claims is an organization of distinguished reputation in Moldova. See

Pl. Mot. at 25. Visinscaia points to a letter from Petru Gozun, the founder of Dance Sport Club Codreanca, see AR 838-39, as well as two articles discussing the history and prestige of the club. See AR 412-27. The AAO questioned Visinscaia's evidence, concluding that it did not establish that she had served in a leading or critical role for the organization. See AAO Appeal Denial at 13. It observed, further, that Visinscaia had been an "instructor" at the Club and that the Gozun letter did not specify how she had "contributed to the organization in a way that is significant to the organization's outcome" in that role. Id. In addition, just because this club may have a distinguished reputation in Moldova does not necessarily mean that its renown spreads much beyond the country's borders.

Once again, Visinscaia is unhappy with the conclusions the agency drew from the record, and she asks the Court to reweigh the evidence. Yet, the agency's lengthy discussion of that evidence, replete with examples from the record, demonstrates that it engaged in a reasoned decisionmaking process, thus satisfying the lenient arbitrary-and-capricious standard of review. Without sufficient detail regarding Plaintiff's role at the organization, it was eminently reasonable for the AAO to conclude that Visinscaia could not satisfy this criterion on the basis of the letter alone. See Noroozi, 905 F. Supp. 2d at 544-45.

### 3. *Exhibitions or Showcases*

The AAO also rejected Visinscaia's argument that her work has been displayed at artistic exhibitions or showcases. See AAO Appeal Denial at 12. Visinscaia submitted documents showing that she had performed numerous times at the National Palace of Moldova, see RFE Response at 50, which, she claims, "correspond[s] to the Kennedy Center in Washington, D.C." Pl. Mot. at 23. The AAO, however, concluded that dance performances could not satisfy this requirement. Instead, the agency asserted, "artistic exhibitions or showcases" are "limited to

13

[presentations of] the visual arts," where "tangible pieces of art . . . were on display." AAO Appeal Denial at 12. Because Visinscaia's performances did not constitute that sort of presentation, they could not be used to meet her burden under this criterion.

Visinscaia responds that "there is no such language in the statute, implementing regulations, the legislative history, or agency memos to support the conclusion that this criterion be restricted in this sense." Pl. Mot. at 24. If she is right, though, this simply means that there is a gap for the agency to fill. See Barnhart v. Walton, 535 U.S. 212, 218 (2002) (holding that silence usually creates ambiguity the agency must resolve). Where that is the case, it is black-letter law that the agency's interpretation of its own regulation deserves deference. See Auer v. Robbins, 519 U.S. 452, 461 (1997). Where neither the statute nor the regulation forecloses a particular interpretation, moreover, deference is especially warranted. See St. Marks Place Housing Co., Inc. v. Dep't of Housing & Urban Dev't, 610 F.3d 75, 83 (D.C. Cir. 2010). In these circumstances, once again, the Court believes the agency's interpretation and application of the law – while certainly not the only plausible one – is reasonable.

          4. *Lesser Awards*

Finally, Visinscaia claims that she satisfies the "lesser national and international awards" criterion on the basis of her 2005 World Championship and her numerous other awards (usually placement in the top two or three at a given event). See Pl. Mot. at 11-19; AR 550-52 (2005 Championship Certificate), 600-609 (Database Verifying Various Other Awards), 632-35 (same). Although the original USCIS adjudicator refused to allow that the World Championship constituted a lesser international award, the AAO did. See AAO Appeal Denial at 7-8. The AAO concluded, however, that none of Visinscaia's other awards was nationally recognized, as the record "contain[ed] no documentary evidence demonstrating that the petitioner's competition

placements are recognized beyond the presenting organizations . . . and are therefore commensurate with nationally or internationally recognized prizes or awards for excellence in the field." Id. at 8. As the AAO noted, the record contained no evidence that the other awards had "garner[ed] national or international recognition from the competition in which it is awarded." Id. at 8-9. There was no evidence, for example, that the newspaper and web sites to which Plaintiff pointed as evidence of international attention had a large readership – or, indeed, any readership at all. Id. Without evidence of how a larger audience viewed Plaintiff's awards, there was no way for the agency to evaluate whether those awards were recognized widely enough to satisfy this criterion.

Because, in its view, Visinscaia had not won multiple national or international awards, USCIS concluded that she had not satisfied the "lesser awards" criterion. That provision, the agency argues, requires that the applicant have received "awards" – in the plural. See AAO Appeal Denial at 9; Def. Mot. at 13 (quoting § 204.5(h)(3)(i)). Although USCIS's reading of the plain language of this regulation seems slightly strained, the Court might well believe deference is required. It need not decide the question, however, as even if Visinscaia were to satisfy this sole criterion, she would still fall short of the three necessary to reach the second phase of the Kazarian analysis. In fact, this is true even if the Court were to hold that USCIS erred on two of the four contested criteria.

## IV.  Conclusion

Despite the Court's admittedly thin expertise in the field of competitive ballroom dancing, it has little doubt that Svetlana Visinscaia is a very good ballroom dancer. But that is a different question from whether USCIS acted arbitrarily when it denied her application for an extraordinary-ability visa. Since the answer to that query is that the agency did not, USCIS must

prevail in this matter. The Court, accordingly, will grant Defendants' Motion for Summary Judgment and deny Plaintiff's. A contemporaneous Order to that effect will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: December 16, 2013